**MESCH CLARK ROTHSCHILD**
Barney M. Holtzman (No. 016554)
259 N. Meyer Avenue
Tucson, AZ  85701-1090
Telephone: (520) 624-8886
Email:  bholtzman@mcrazlaw.com

**FRANTZ WARD LLP**
Carl H. Gluek (0029531)
*Admitted Pro Hac Vice*
Andrew J. Cleves (0089680)
*Admitted Pro Hac Vice*
200 Public Square, Suite 3000
Cleveland, OH  44114
Telephone: 216-515-1660
Facsimile: 216-515-1650
Email:  CGluek@frantzward.com
Email:  ACleves@frantzward.com

Attorneys for Defendants Gannett Co. Inc. and
TNI Partners dba Arizona Daily Star

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| NATALIE FIGUEROA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>GANNETT CO. INC., et al.,<br><br>　　　　Defendants. | No. 19-cv-00022-TUC-CKJ<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 1:**<br><br>**TO LIMIT PLAINTIFF'S MEDICAL EXPERTS TO OPINIONS FORMED DURING THEIR TREATMENT OF PLAINTIFF** |

　　　　Pursuant to Federal Rule of Civil Procedure 26(a)(2) and Federal Rules of Evidence 702, 703, and 704, Defendants Gannett Co., Inc. and TNI Partners dba Arizona Daily Star respectfully move this Court for an Order *in limine* limiting Plaintiff's medical experts' testimony, and evidence relating to such experts, to opinions they formed during their

{00959931-12 }

treatment of Plaintiff.

A memorandum in support of this motion is being filed herewith.

Respectfully submitted,

 /s/ Carl H. Gluek
Frantz Ward LLP
Carl H. Gluek (OH# 0029531)
*Admitted Pro Hac Vice*
Andrew J. Cleves (OH# 0089680)
*Admitted Pro Hac Vice*

and

MESCH CLARK ROTHSCHILD
Barney M. Holtzman

*Attorneys for Defendants Gannett Co., Inc. and TNI Partners dba Arizona Daily Star*

{00959931-12}                                                        2

**MESCH CLARK ROTHSCHILD**
Barney M. Holtzman (No. 016554)
259 N. Meyer Avenue
Tucson, AZ  85701-1090
Telephone: (520) 624-8886
Email:  bholtzman@mcrazlaw.com

**FRANTZ WARD LLP**
Carl H. Gluek (0029531)
*Admitted Pro Hac Vice*
Andrew J. Cleves (0089680)
*Admitted Pro Hac Vice*
200 Public Square, Suite 3000
Cleveland, OH  44114
Telephone: 216-515-1660
Facsimile: 216-515-1650
Email:  CGluek@frantzward.com
Email:  ACleves@frantzward.com

Attorneys for Defendants Gannett Co. Inc. and
TNI Partners dba Arizona Daily Star

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| NATALIE FIGUEROA,<br><br>    Plaintiff,<br><br>vs.<br><br>GANNETT CO. INC., et al.,<br><br>    Defendants. | No. 19-cv-00022-TUC-CKJ<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* NO. 1:**<br><br>**TO LIMIT PLAINTIFF'S MEDICAL EXPERTS TO OPINIONS FORMED DURING THEIR TREATMENT OF PLAINTIFF** |

**I.      INTRODUCTION**

In this matter, Plaintiff Natalie Figueroa ("Plaintiff") filed numerous disclosures relating to Rincon Pain & Spine, and two of its medical providers – Randall Prust, M.D. and Kenneth Judkins, PA.  In those disclosures, Plaintiff listed her medical providers as

experts and disclosed that they will testify as to:

- Legal conclusions – Plaintiff described several legal conclusions to which her medical providers will testify, including whether Plaintiff: is a qualified individual with a disability under the ADA; has physical impairments that substantially limit her ability to participate in one or more major life activities; and could perform, with a reasonable accommodation, the essential functions of her job.

- Information received in the course of litigation - Plaintiff described anticipated testimony that based upon information her medical provider received from Plaintiff's counsel during litigation. That includes a performance evaluation and description of Defendants' representations in the lawsuit of communications they had with Plaintiff's medical provider.

- Information only reviewed after inquiry by Plaintiff's counsel – Plaintiff's disclosures also suggest that Dr. Prust's anticipated testimony will be based upon, in part, certain information that he only reviewed after Plaintiff's counsel inquired about it. For example, in a letter, Plaintiff's counsel described her medical provider's statements as "[f]rom what your records show, it appears the newspaper . . . ."

- Opinions concerning Plaintiff's future conditions – Plaintiff described anticipated testimony in which her medical providers will make speculative, general, and non-medical testimony regarding her future conditions, including her "reasonable expectation for work during her lifetime."

However, Plaintiff never filed an expert disclosure report pursuant to Fed. R. Civ. P. 26(a)(2)(B) in connection with these medical providers. Therefore, any testimony or evidence provided by Dr. Prust and/or Mr. Judkins must be limited to opinions they formed during their treatment of Plaintiff. Moreover, under no circumstances can they testify regarding legal conclusions. No expert can provide their opinion on an ultimate issue of law, as that remains within the purview of the factfinder. Furthermore, the Court should exclude the experts' anticipated testimony concerning additional information disclosed in untimely supplemental disclosure statements. Finally, the Court should specifically

exclude from evidence a letter that Plaintiff's counsel sent to Dr. Prust relating to his anticipated testimony.

For these and all the reasons set forth below, any testimony and evidence from and relating to Plaintiff's medical experts should be limited to opinions these medical providers formed during the course of their treatment of Plaintiff.

## II.     PLAINTIFF'S MEDICAL PROVIDER DISCLOSURES

Plaintiff made numerous disclosures related to her Rincon Pain & Spine medical providers Dr. Prust and Mr. Judkins.  Plaintiff's initial disclosure statement described the scope of their anticipated testimony as follows: they "will testify as to the reasonableness and necessity of the treatment received by Mrs. Figueroa as well as the billing charge was reasonable for the community diagnosis, physical impairment, disability, and work limitations." (Exhibit 1, Plaintiff's Initial Disclosure Statement).

On October 11, 2019, in her Supplemental Expert Witness Disclosure, Plaintiff expanded the scope of the anticipated testimony of her medical providers.  In addition to their treatment of Plaintiff, she disclosed legal conclusions to which they would testify. (Exhibit 2, Plaintiff's Supplemental Expert Witness Disclosure). For example, Plaintiff's disclosure included the following:

- "Both assess physical impairments, which are documented to have existed for many years, and which qualify [Plaintiff] as an individual with a disability within the meaning of the ADA;"

- "[T]heir histories, assessments, and findings establish physical impairments, which substantially limit [Plaintiff] in her ability to participate in major life activities[;]"

- "[A]nd that with reasonable accommodations to the limitations expressed in the work capability forms for [Plaintiff], she was able to perform the essential functions of her job with Defendants."

(*Id.*) Plaintiff also disclosed additional anticipated topics, including "testimony pertaining to their communications with Defendants about [Plaintiff's] medical condition and work status[;]" and "they will express opinions concerning the Plaintiff's reasonable expectation for work during her lifetime." (*Id.*)

In her final disclosure at the close of discovery on January 9, 2020, Plaintiff expanded the anticipated expert medical testimony she would offer, to include "[a]ny medical person identified in any of Plaintiff's medical records, to discuss the records, history, diagnosis, findings or treatments, and impairments and disability." (Exhibit 3, Plaintiff's Fourth Supplemental Disclosure Statement).

Months after the January 9, 2020 close of discovery and disclosure deadline, Plaintiff again revised the anticipated testimony of her medical providers. On June 23, 2020, Plaintiff first added that "Dr. Prust will explain interaction with Defendant prompting the elimination of all clerical work restrictions." (Exhibit 4, Plaintiff's Fifth Supplemental Disclosure Statement). In addition, Plaintiff expanded her expert list to include "[e]xperts described in October 11, 2019 disclosure." (*Id.*)

Then, in a Sixth Supplemental Disclosure Statement, provided on October 23, 2020, more than nine months after the close of the discovery and disclosure deadline, Plaintiff expanded Dr. Prust's and Mr. Jenkins's anticipated testimony once more. In it, Plaintiff once again repeatedly described legal conclusions to which she anticipated her Rincon Pain

& Spine medical providers will testify. For example, Plaintiff disclosed that their testimony will include that "[t]he documented impairments affect one or more life activity. As such, [Plaintiff] is an individual with a qualified disability under ADA." (Exhibit 5, Sixth Supplemental Disclosure Statement and Confirming Letter).[1] In addition, Plaintiff explained how Dr. Prust's testimony will reflect information provided to him in connection with this litigation. Plaintiff disclosed a confirming letter, in which her counsel stated: "I enclose a performance appraisal from the newspaper dated June 22, 2016 describing [Plaintiff's] position as both a product design planner and product design technician. This narrative confirms [Plaintiff's] description of her job duties as primarily at a computer." (*Id.*) In addition, Plaintiff's counsel demonstrated that Plaintiff's medical provider only reviewed some information after inquiry by Plaintiff's counsel's. For example, Plaintiff's counsel stated "[f]rom what your records show, it appears the newspaper . . . ." (*Id.*) Finally, Plaintiff's counsel described litigation positions of Defendants to Dr. Prust – "[y]ou understand the newspaper states it contacted Rincon concerning the separate limitation." (*Id.*)

### III.    LAW AND ARGUMENT

   **A.    *Based Upon Plaintiff's Disclosures, Her Medical Providers' Testimony Should Be Limited to Opinions Formed During the Course of Their Treatment of Plaintiff.***

Fed. R. Civ. P. 26(a)(2)(B) contains comprehensive expert disclosure requirements.

---

[1] Similarly, Plaintiff's counsel stated, in his confirming letter to Dr. Prust, that "[b]ecause of her back injury dating back to 1992, she suffers from documented impairments which substantially limit one or more of her major life activities. As such, she is an individual with a disability under ADA." (*Id.*)

If a party retains a witness to provide expert testimony in the case, that party must disclose an expert report, "prepared and signed by the witness," which contains: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B).

Here, on multiple occasions, Plaintiff disclosed her Rincon Pain & Spine medical providers as experts,[2] but never produced a Rule 26(a)(2)(B) disclosure report from those experts. Although treating physician expert witnesses generally are exempt from Rule 26(a)(2)(B)'s written report requirements, the exemption applies only "to the extent that [their] opinions were formed during the course of treatment." *Goodman v. Staple the office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). If a party has not disclosed a report which complies with all of Rule 26(a)(2)(B)'s requirements, "the expert may not testify as to opinions beyond the above." *Hall v. Eads*, No. CV-16-03855, 2019 U.S. Dist. LEXIS 178555, *2 (D. Ariz. May 1, 2019).

---

[2] Those included her October 11, 2019 Supplemental Expert Witness Disclosure Statement, her January 9, 2020 Fourth Supplemental Disclosure Statement, and her June 23, 2020 Fifth Supplemental Disclosure Statement. (*See* Exhibits 2, 3, and 4).

Courts have clearly delineated what "opinions formed during the course of treatment" means in this context. The critical distinction is whether the doctor's testimony "is based only on percipient knowledge or on information reviewed in anticipation [of] trial." *Shrader v. Pape Trucks, Inc.* No. 2:18-cv-00014, 2020 U.S. Dist. LEXIS 159441, *5-6 (E.D. Cal. Aug. 31, 2020) (citing string of District Court cases). Permissible testimony may include medical opinions formed from considering "prior medical records, physician reports, and other related documents . . . provided that these documents informed [the physician's] ongoing treatment." *Shenon v. New York Life Ins. Co.*, No. 2:18-cv-00240, 2020 U.S. Dist. LEXIS 48858, *12 (C.D. Cal. Mar. 16, 2020). However, where the doctor "reviewed information provided by [the] attorney that they hadn't reviewed during the course of treatment[,]" that fell beyond the scope of treatment rendered and required a written expert report. *Goodman*, 644 F.3d at 826. Moreover, physicians cannot testify concerning any "legal conclusions about whether [Plaintiff's] condition entitles her to" benefits "or any prognosis as to [Plaintiff's] future conditions and abilities." *Shenon*, 2020 U.S. Dist. LEXIS 488858 at *12.

Plaintiff has proposed that her medical experts will testify about numerous topics that fall outside the course of her treatment and should be excluded at trial. Those include:

- <u>Legal conclusions</u> - Plaintiff included multiple legal conclusions within the scope of her medical provider's anticipated testimony. Those include testimony concerning whether Plaintiff: is a qualified individual with a disability under the ADA; has physical impairments that substantially limit her ability to participate in one or more major life activities; and could perform, with a reasonable accommodation, the essential functions of her job. (*See* Exh. 2, 5).

- <u>Information received in the course of litigation</u> - Plaintiff's disclosures included anticipated testimony based upon information her medical provider received from Plaintiff's counsel during litigation. In his letter attached to Plaintiff's Sixth Supplemental Disclosure, Plaintiff's counsel explicitly described information he provided to the medical provider, including: Plaintiff's June 22, 2016 performance evaluation; and Defendants' representations in the lawsuit of communications they had with Plaintiff's medical provider regarding her return-to-work restrictions.[3] (Exh. 5).

- <u>Information only reviewed after inquiry by Plaintiff's counsel</u> - Plaintiff's counsel's letter also suggests that Dr. Prust only reviewed certain information after Plaintiff's counsel inquired about it. For example, after asserting the medical providers did not authorize changes to Plaintiff's return-to-work restrictions, which Defendants' dispute, Plaintiff's counsel stated "[f]rom what your records showed, it appears the newspaper. . . ." (*Id.*)

- <u>Opinions concerning Plaintiff's future conditions</u> - Plaintiff proposed that her medical providers will make speculative, general, and non-medical testimony regarding her future conditions – "they will express opinions concerning the Plaintiff's reasonable expectation for work during her lifetime." (Exh. 2).

As to all these topics, Plaintiff's medical providers would be offering testimony and opinions on matters outside the course of their treatment of Plaintiff. Since Plaintiff failed to provide the proper expert disclosure reports, her medical providers' testimony should be limited to opinions formed during the course of treatment.

    **B.**    ***Regardless of Plaintiff's Disclosures, Her Medical Providers Cannot Testify as to Any Legal Conclusions.***

Regardless of Plaintiff's disclosures, her medical providers cannot testify as to any legal conclusions. "[A]n expert witness cannot give an opinion as to [his] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins.*

---

[3] The letter suggests that Plaintiff's counsel provided other information to Dr. Prust as well. For example, Plaintiff's counsel stated Plaintiff's position on her job duties - "[Plaintiff] describes her job as including 85% clerical work at a computer." (*Id.*)

*Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). This prohibition "recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *United States v. Diaz*, 876 F.3d 119, 1197 (9th Cir. 2017). This prohibition has been held to encompass attempted expert testimony concerning elements of an ADA claim. *See, e.g., Hood v. Time Warner Cable LLC*, No. SACV-08-0583, 2009 U.S. Dist. LEXIS 37744, *11-12 (C.D. Cal. April 30, 2009) ("The Sniderman Declaration offers improper legal conclusions, including findings that TWC failed to engage in an interactive process with Plaintiff and that TWC failed to accommodate Plaintiff's disability. . . . The motion in *limine* is granted[.]")

Here, as previously discussed, Plaintiff has proposed that her medical providers will testify regarding specific legal conclusions and elements of her ADA claims. Those include whether Plaintiff: has physical impairments that substantially limit her ability to participate in one or more major life activities; is a qualified individual; and could perform, with a reasonable accommodation, the essential functions of her job. (*See* Exh. 2, 5). It is wholly inappropriate for Plaintiff's medical providers to testify to these topics and provide their legal conclusions. For the reasons described herein and in Section II.A. above, the Court should exclude any such testimony.

    **C.**    ***Additional Information Disclosed in Plaintiff's Untimely Fifth and Sixth Supplemental Disclosures Should Be Excluded.***

The Court's Case Management Order required the parties to complete fact discovery and exchange all relevant disclosures no later than January 9. 2020. (DN 20). Nonetheless,

Plaintiff made two supplemental disclosure statements months later – a Fifth Supplemental Disclosure Statement on June 23, 2020 and a Sixth Supplemental Disclosure Statement on October 23, 2020. (*See* Exhs. 4, 5).

Where a party serves disclosures months after the relevant cut-off, those disclosures are untimely. *See, e.g., Ketab Corp. v. Mesirani Law Grp.*, No. cv-14-07241, 2016 U.S. Dist. LEXIS 37151, *13-14 (C.D. Cal. Mar. 18, 2016) (disclosures untimely when served almost four months after discovery cut-off); *Melczer v. Unum Life Ins. Co. of Am.*, 259 F.R.D. 433, 435 (D. Ariz. 2009) (disclosure untimely where provided several months after discovery deadline passed). In such instance, the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Saracana Condo. Ass'n v. State Farm Fire & Cas. Co.*, No. 2:12-cv-02250, 2014 U.S. Dist. LEXIS 185207, *15-16 (D. Ariz. Dec. 31, 2014) (*quoting* Fed. R. Civ. P. 37(c)(1)). A party's failure is not substantially justified where they have no legitimate explanation nor is it harmless where material differences exist between the supplemental and prior disclosures. *See, e.g.*, *Melczer*, 259 F.R.D. at 435 (not substantially justified); *Greenawalk v. Sun City W. Fire Dist.*, No. CV-98-1408, 2006 U.S. Dist. LEXIS 40447, *15 (D. Ariz. June 10, 2006) (not harmless).

Here, Plaintiff's Fifth and Sixth Supplemental Disclosures were untimely, as she made them over five months (Fifth Supplemental Disclosure) and nine months (Sixth Supplemental Disclosure) respectively after the close of discovery.[4]

---

[4] In addition, Plaintiff should have produced the requested information and documentation sooner in response to Defendants' discovery requests. In their Requests for Production,

At the time of service, Plaintiff did not claim her untimeliness was substantially justified or harmless, nor could she. Each supplemental disclosure simply expanded the anticipated testimony of her previously disclosed medical providers, including a "confirming letter" describing the expanded testimony. Plaintiff first disclosed Dr. Prust and/or Mr. Judkins as experts months (and even years) earlier. On February 15, 2019, she disclosed general testimony from Dr. Prust and Mr. Judkins (Initial Disclosure Statement) and on October 11, 2019 (Supplemental Expert Witness Disclosure) Plaintiff disclosed expert testimony from them. (Exhs. 1, 2). Therefore, Plaintiff had no legitimate reason to wait months after the close of discovery to make these supplemental disclosures which, by rule, are required to be related to their treatment of Plaintiff years earlier. In addition, Plaintiff cannot prove her delayed disclosures were harmless – they contained material additions. For example, the Sixth Supplemental Disclosure demonstrates that Plaintiff's counsel provided or described additional information to Dr. Prust and that Dr. Prust reviewed some information only after inquiry by Plaintiff's counsel.

For all these reasons, Plaintiff cannot demonstrate her delay in providing her Fifth or Sixth Supplemental Disclosures was substantially justified or harmless. As a result, additional information, evidence and/or anticipated testimony disclosed in those supplemental disclosures should be excluded from evidence at trial.

---

Defendants specifically requested that Plaintiff produce documents reviewed by (No. 4) and containing the "opinions, conclusions, or assertions of fact" of any expert upon whom Plaintiff intended to rely (No. 3). In response to each Request, Plaintiff indicated she would supplement her discovery responses. (Exhibit 6, Plaintiff's Discovery Responses).

### D.  *The Court Should Exclude Plaintiff's Counsel's "Confirming Letter."*

Courts should exclude an attorney's letter that includes discussion of a party's medical conditions and legal conclusions. *See Klungvedt v. Unum Group*, No. 2:12-cv-00651, 2012 U.S. Dist. LEXIS 155972 (D. Ariz. Oct. 13, 2012). In *Klungvedt*, plaintiff's counsel wrote letters setting forth their opinions on plaintiff's medical conditions and the consequences of those conditions on Plaintiff's abilities. *Id.* at *7. If admitted at trial, the court determined "it would be tantamount to the attorney testifying about [plaintiff's] medical condition." *Id.* at *7-8. The court also noted the attorney was not qualified as, nor purported to be, a medical expert. Furthermore, the court reasoned, the attorney's letters contained "the attorney's legal conclusions and opinions on ultimate issues of law." *Id.* at *8. For these and other reasons, the *Klungvedt* court found the letters inadmissible. *Id.*

The letter Plaintiff attached to her untimely Sixth Supplemental Disclosure Statement, written by her counsel, likewise includes medical opinions and legal conclusions. Nothing is more telling of the letter's nature than the first paragraph, which states:

> **QUALIFIED DISABILITY UNDER ADA.** You treated [Plaintiff] for her back condition for several years. Because of her back injury dating back to 1992, she suffers from documented impairments which substantially limit one or more of her major life activities. As such, she is an individual with a disability under ADA." (*Id.*)

(Exh. 5). Moreover, the letter is replete with Plaintiff's counsel's representations, opinions, and descriptions of events. As a result, this letter should be excluded from evidence as untimely and improper.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court issue an Order *in limine* limiting testimony and evidence from and relating to Plaintiff's medical experts to opinions formed during their treatment of Plaintiff. This Order should specifically exclude testimony from Plaintiff's medical providers concerning: legal conclusions; information the medical providers received in the course of litigation; information the medical providers only reviewed after inquiry by Plaintiff's counsel; and the medical providers' opinions concerning Plaintiff's future conditions. Defendants also respectfully request that this Order exclude the additional information, evidence, and/or anticipated testimony Plaintiff disclosed in her Fifth and Sixth Supplemental Disclosures and Plaintiff's counsel's "confirming letter" to Dr. Prust from being entered into evidence.

                                           Respectfully submitted,

                                           /s/ Carl H. Gluek
                                           Frantz Ward LLP
                                           Carl H. Gluek (OH# 0029531)
                                           *Admitted Pro Hac Vice*
                                           Andrew J. Cleves (OH# 0089680)
                                           *Admitted Pro Hac Vice*

                                           and
                                           MESCH CLARK ROTHSCHILD
                                           Barney M. Holtzman

                                           *Attorneys for Defendants Gannett Co., Inc.*
                                           *and TNI Partners dba Arizona Daily Star*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on February 5, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Carl H. Gluek*
Carl H. Gluek (OH# 0029531)
*Admitted Pro Hac Vice*
