WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalie Figueroa,<br><br>           Plaintiff,<br><br>vs.<br><br>Gannett Company Incorporated, et al.,<br><br>           Defendants. | No. CIV 19-022-TUC-CKJ<br><br>ORDER<br><br>VERDICT<br><br>Damages – Back Pay |

The parties have presented evidence and argument to the Court regarding the issue of back pay damages. The Court finds an award of back pay is appropriate for the reasons set forth herein.

*Liability Finding by the Jury*

The jury has found Defendants Gannett Company Incorporated and TNI Partners (collectively, "Defendants") liable to Plaintiff Natalie Figueroa ("Figueroa") as to her claims that (1) she was a qualified individual with a disability and Defendants' terminated Figueroa's employment because of her disability and (2) Defendants discriminated against Figueroa by failing to provide a reasonable accommodation. The Court accepts these findings.

Because Defendants have been found liable for terminating Figueroa's employment because of her disability, the Court accepts the jury found, *inter alia*, Figueroa was an individual with a disability who, with or without a reasonable accommodation, could perform the essential functions of the employment position that she had held. Further,

1  because Defendants have been found liable for discriminating against Figueroa by failing
2  to provide a reasonable accommodation, the Court accepts the jury found, *inter alia*,
3  Figueroa was a qualified individual.  In other words, the Court accepts that Figueroa was
4  an individual with a disability who, with or without a reasonable accommodation, could
5  perform the essential functions of her employment position at the time the discrimination
6  occurred.  *See* 42 U.S.C. § 12111(8).

*Summary of Key Evidence*

Figueroa was employed by Defendants at the Arizona Daily Star for approximately 29 years; her positions involved both physical and clerical tasks.  Evidence at trial established that Figueroa received an annual salary of $39,374 and annual health benefits of $5,652 for a total annual salary of $45,026.  Exs. 10, 51.  As determined by the jury, Figueroa was wrongfully terminated on June 21, 2017.

Figueroa testified that she performed the positions of product design technician and product design planner.  However, Felipe Lundin ("Lundin"), the product design manager and Figueroa's supervisor, testified Figueroa was a *backup* product design planner and the only times she was exclusively a product design planner was when the actual product design planner was on vacation, called in sick, or was absent for the day.  The evidence also established that Figueroa's position was eliminated in May of 2019; indeed 60-70 people in the print operations of the newspaper were terminated at that time.

Further, Figueroa testified that she decided to not apply for other jobs after she was terminated because, with her restrictions, age, and limited education, she did not feel like any employer would hire her.  Additionally, she did not seek unemployment benefits or pursue any additional education. However, she also testified that, with accommodations, she would have been able to perform the duties of the job she had with Defendants; she knew what was required and what she lacked in speed was made up through her knowledge.

The evidence established that Figueroa stated on multiple occasions that she could

not work because of her condition. Indeed, Figueroa testified that approximately a week before her termination she informed MetLife she was in pain, suffered from spasms, and received little or no relief from medication. Ex. 114. Figueroa testified that the events of June 21, 2017, led to depression and additional physical problems. The physical problems included a doubling of the pain she suffered, arms going numb, feeling like she was having a heart attack, and difficulty breathing. Figueroa also testified that, on July 17, 2017, she informed Rincon Pain Management ("RPM") that she had sharp, aching pain radiating; she said her pain was a nine out of ten; she reported similar complaints in July of 2018 to RPM. Further, although the records do not include the information, Figueroa testified that she reported depression, sleep disturbance, and anxiety to RPM. Figueroa also testified that in October 2017, she informed MetLife that she could not sit for an extended period and was unable to stand from a sitting position without assistance and she suffered from neck pain and shoulder cramping radiating to her hands which caused numbness in her fingers. Ex. 124. Similarly, Figueroa informed MetLife in January of 2018 that she had excruciating pain radiating down the groin area and spasms; upper neck pain, arthritis, and constant headaches; numbness in hands and feet; could not sleep without a back brace; and her ability to perform home care tasks was limited. Ex. 132. Generally, Figueroa testified that her physical condition gets better at times and worsens at times.

As to her depression, Figueroa testified she felt demoralized, humiliated, and embarrassed to such an extent she withdrew from some social interactions; the depression even led to a weight loss. Figueroa's daughter testified that, after the termination, Figueroa frequently cried, rarely left the home, did not socialize, and did not maintain household chores. However, Figueroa maintained a relationship with a boyfriend. Although the signs of depression have improved, Figueroa's socialization has remained minimal. Figueroa's daughter also testified that, while Figueroa was unable to do heavy lifting prior to the termination, following the termination she was not able to even lift a gallon of milk. Further, she could not drive for long distances.

*Conclusions of the Court*

The jury having determined Defendants are liable for the discrimination against Figueroa, the Court accepts that, as of her termination, Figueroa was able to perform the essential functions of the position. However, the Court finds Figueroa's testimony that the termination caused her to suffer both emotionally and physically to be credible. In such circumstances, the Court finds Figueroa's "reasonable efforts to mitigate damages" does not require that she have pursued other employment. Rather, it was the actions of Defendants in terminating Figueroa that caused the exacerbation of her symptoms such that she was unable to mitigate her damages. The Court finds Figueroa is entitled to back pay at an annual rate of $45,026, beginning on June 21, 2017.

However, the print operations for the Arizona Daily Star moved to Phoenix in May 2019. The Court finds Lundin's testimony that Figueroa was a backup product design planner to the actual product design planner to be credible. Further, the Court finds credible Lundin's testimony that the product design planner, Paula Varela, retained a position after May 2019, and that Figueroa would not have received a product design planner position at that time had she still been employed by Defendants. The Court does not find Figueroa's conjecture that she would have received a planning position after that time to be reasonable. Therefore, Figueroa is only entitled to back pay through May 2019. The Court finds by a preponderance of evidence Figueroa is entitled to an award of back pay in the amount of $87,455 for the time period between June 21, 2017, through May 2019.[1]

Additionally, prejudgment interest is appropriate because "a monetary award does not fully compensate for an injury unless it includes an interest component." *United States v. Bell*, 602 F.3d 1074, 1084 (9th Cir. 2010), *as amended by* 734 F.3d 1223 (9th Cir. 2013), *citation omitted*; *see also Loeffler v. Frank*, 486 U.S. 549, 558–58 (1988); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1446 (9th Cir.1984). It is within a trial court's discretion

---

[1] The annual salary of $45,026, divided by 52 weeks results is a weekly salary of $865.89. The covered period being for 101 weeks, the rounded-up total is $87,455.

- 4 -

to determine the interest rate used to calculate prejudgment interest and must be exercised with a view to the fact that prejudgment interest is an element of compensation, not a penalty. *W. Pac. Fisheries, Inv. v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984). However, generally "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest." *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007), *internal quotation marks omitted*. The Court will use the § 1961 rate effective for the week in which the calculating date corresponds.

The prejudgment interest on the annual salary of $45,026 from June 21, 2017, through June 21, 2018, is calculated at 2.34% for a total of $46,080. $46,080 plus a 49 week salary of $42,429 from June 21, 2018, through May 31, 2019, is $88,509, which is calculated at 2.28%, for a total of $88,511. The total with compounded interest at a rate of .17% as of May 31, 2020, is $88,662, the total with compounded interest at a rate of .04% as of May 31, 2021, is $88,697, and the total with compounded interest at a rate of 2.02% as of May 31, 2022, is $90,489. The Court will calculate further prejudgment interest upon issuance of the judgment.

*Additional Proceedings*

The Court anticipates the filing of either a motion or stipulation pursuant to 42 U.S.C. § 1981a will be filed. Further, counsel for Figueroa has stated an intent to file a motion for attorney's fees. The Court, therefore, will schedule deadlines for these filings and will defer entering a judgment at this time.

Accordingly, IT IS ORDERED:

1. Natalie Figueroa is awarded back pay in the amount of $87,455 for the time period between June 21, 2017, through May 2019.

2. Natalie Figueroa is entitled to prejudgment interest, to be fully calculated

when the judgment is issued.

3. Any motion or stipulation pursuant to 42 U.S.C. § 1981a shall be filed on or before July 1, 2022. Any response shall be filed on or before July 18, 2022, and any reply shall be filed on July 25, 2022.

4. Any motion for attorney's fees shall be filed within 14 days of the Court's ruling on a motion or stipulation pursuant to 42 U.S.C. §1981a or, if no such motion/stipulation is filed, on or before July 18, 2022. Any responsive and reply memoranda must be filed in accordance with the deadlines set forth in LRCiv 7.2.

5. The Clerk of Court shall return the trial exhibits to the parties.

DATED this 15th day of June, 2022.

*[signature]*
Cindy K. Jorgenson
United States District Judge