**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Natalie Figueroa, | ) | |
| Plaintiff, | ) | No. CIV 19-022-TUC-CKJ |
| vs. | ) | |
| Gannett Company Incorporated, et al., | ) | ORDER |
| Defendants. | ) | |

Pending before the Court are the Request for an Order to Clerk to Maintain File Open to Allow Plaintiff to Move for Attorney's Fees and Costs (Doc. 294) and the Motion for Attorney's Fees (Docs. 295, 296, 298, 301) filed by Plaintiff Natalie Figueroa ("Figueroa"). Also pending before the Court is the Renewed Motion for Judgment as a Matter of Law and Motion for New Trial (Doc. 306) filed by Defendants Gannett Co., Inc., and TNI Partners dba Arizona Daily Star ("Gannett"). Responses and replies have been filed. The Court declines to set this matter for oral argument. *See* LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:361 (March 2023) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.").

Figueroa was awarded $275,000.00 in compensatory damages and $3,700,000.00 in punitive damages in this case. (Docs. 271-275). Pursuant to 42 U.S.C. §1981a(b)(3), the Court reduced the combined compensatory and punitive damages award is to the statutory cap of $300,000 cap. (Doc. 292). Additionally, the Court awarded back pay, along with pre-judgment interest, to Figueroa in the amount of $93,457.04. (Doc. 292).

I.  *Request for an Order to Clerk to Maintain File Open to Allow Plaintiff to Move for Attorney's Fees and Costs* (Doc. 294)

Pursuant to this Court's August 17, 2022, Order, the Clerk of Court closed its file in this matter.  Figueroa requests this order be modified to permit her to move for attorney's fees.  However, the closing of the file after entry of judgment is an administrative process that does not affect the ability to request attorney's fees.  Further, Figueroa has submitted her request for attorney's fees.  The Court will deny this request.

II.  *Motion for Extension of Time* (Doc. 310)

Figueroa requested additional time to file a reply to the Motion for Attorney's Fees. The Court will grant this request and accepts Figueroa's reply.

III.  *Renewed Motion for Judgment as a Matter of Law and Motion for New Trial* (Doc. 306)

Gannett renews its motion for judgment or partial judgment as a matter of law ("JMOL") on three grounds.  Gannett asserts Figueroa failed to introduce sufficient evidence establishing she is a qualified individual under the Americans with Disabilities Act ("ADA"), Figueroa failed to mitigate her lost wages by looking for a new job, and Gannett did not act with malice or reckless disregard for Figueroa's rights.

The applicable rule states:

If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law.

1   Fed. R. Civ. P. 50(b).

2          If a jury verdict is supported by substantial evidence it must be upheld.  *See Wallace*

3   *v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007), *citation omitted*. "Substantial

4   evidence is such relevant evidence as reasonable minds might accept as adequate to support

5   a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."

6   *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014), *citation and quotations*

7   *omitted*.

8          Judgment as a matter of law is appropriate if "the evidence, construed in the light

9   most favorable to the nonmoving party, 'permits only one reasonable conclusion, and that

10  conclusion is contrary to the jury's verdict.'"  *Keates v. Koile*, 846 F. App'x 628, 630 (9th

11  Cir. 2021), *quoting Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).

12         Because the standards for granting summary judgment and judgment as a matter of

13  law mirror one another, courts must "review all of the evidence in the record."  *See Reeves*

14  *v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), *citations omitted*.  Although

15  "the court must draw all reasonable inferences in favor of the nonmoving party . . . it may

16  not make credibility determinations or weigh the evidence."  *Id*., *citations omitted*; *E.E.O.C.*

17  *v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  "[T]he court should give

18  credence to the evidence favoring the nonmovant as well as that 'evidence supporting the

19  moving party that is uncontradicted and unimpeached, at least to the extent that that

20  evidence comes from disinterested witnesses.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*,

21  530 U.S. 133, 151 (2000), *citation omitted*.  The Ninth Circuit has stated, "'It is error to deny

22  a judgment [as a matter of law] when it is clear that the evidence and its inferences cannot

23  reasonably support a judgment in favor of the opposing party.'"  *Weaving v. City of*

24  *Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014), *citation omitted*.

25         Alternatively, Gannett seeks a new trial on these issues because the judgment is

26  against the weight of the evidence.  The Court "can grant a new trial 'for any of the reasons

27  for which new trials have heretofore been granted in actions at law in the courts of the

28

United States,' including where 'the verdict is against the weight of the evidence' and where 'the trial was not fair to the party moving[.]'" *Stop StaringA Designs v. Tatyana, LLC*, 625 F. App'x 328, 329 (9th Cir. 2015), *citations omitted*. Indeed, the Court can grant a new trial on "any ground necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

Further, the Court "is not limited to the grounds a party asserts to justify a new trial, but may sua sponte raise its own concerns about the damages verdict." *Id*. at 842. In considering a motion for new trial, the Court "is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Id*. As summarized by a treatise:

> It may be doubted whether there is any verbal formula that will be of much use to trial courts in passing on motions of the type now being considered. Necessarily all formulations are couched in broad and general terms that furnish no unerring litmus for a particular case. On the one hand, the trial judge does not sit to approve miscarriages of justice. The judge's power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of the judge's own doubts in the matter. Probably all that the judge can do is to balance these conflicting principles in the light of the facts of the particular case. If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that the judge will grant a new trial.

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806 Grounds for New Trial—Weight of the Evidence (3d ed. Apr. 2022), *footnotes omitted*.

A. *Qualified Individual*

Gannett moved for JMOL on the basis Figueroa had failed to provide sufficient evidence she was a qualified individual under the ADA. This Court denied that request. On June 6, 2022, the jury returned verdicts as to the liability phase, including a finding Figueroa had proven she was a qualified individual with a disability.

A qualified individual is someone who, with or without a reasonable accommodation,

1   can perform the essential functions of the employment position that such individual holds

2   or desires.  42 U.S.C. § 12111(8).  The Ninth Circuit has stated:

3           The EEOC promulgated 29 C.F.R. § 1630.2(m) to further elaborate upon the
        meaning of the term "qualified."  That subsection sets forth a two-step inquiry for
4       determining whether the individual is qualified.  We first determine whether the
        individual satisfies the prerequisites of the job; more specifically, whether "the
5       individual satisfies the requisite skill, experience, education and other job-related
        requirements of the employment position such individual holds or desires."  At step
6       two, we determine whether, "with or without reasonable accommodation," the
        individual is able to "perform the essential functions of such position." 29 C.F.R. §
7       1630.2(m).

8   *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127–28 (9th Cir. 2020).  Further, "a person

9   who is totally disabled and therefore unable to perform her job, even with accommodation,

10  is not a 'qualified individual' under the ADA."  *Jett v. Longs Drug Stores Corp.*, 166 F.3d

11  1217 (9th Cir. 1999).[1]

12          Evidence presented at trial included Figueroa's testimony, doctor's evaluations, and

13  disability benefits applications.  Figueroa testified, when she went on leave in March, she

14  was unable to work because of medication she took.  She also testified her physical

15  condition did not allow her to work.  Additionally, Figueroa repeatedly represented that she

16  is unable to work due to her physical condition, remained out of work for several months,

17  reporting over and over that she could not work, and told MetLife, medical providers, and

18  Gannett that she could not work.

19          However, Figueroa also testified that, based on her past experience, she knew she

20  could perform the essential functions of the job.  Further, after she was released to return

21  to work with two sets of limitations, she tried to return to work.  The Ninth Circuit has

22  recognized "[t]here is no inconsistency between being totally disabled at a particular point

23  in time and in not being totally disabled at a later point in time."  *Smith v. Clark Cnty. Sch.*

24

25          [1]Figueroa again argues Gannett should be estopped from arguing Figueroa was not
26  physically capable of performing the essential functions of her job.  As the Court has
    previously stated, this argument "does not recognize that, as time passed and circumstances
27  changed, Defendants' position changed."  Oct. 27, 2021 Order (Doc. 137, p. 2).  The Court
28  declines to revisit this issue.

- 5 -

*Dist.*, 727 F.3d 950, 957 (9th Cir. 2013); *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 796, (1999) ("An individual might qualify for SSDI under SSA's administrative rules and yet, due to special individual circumstances, be capable of performing the essential functions of her job. Or her condition might have changed over time, so that a statement about her disability made at the time of her application for SSDI benefits does not reflect her capacities at the time of the relevant employment decision.").

Although Gannett argues Figueroa's self-serving statements, without more, are insufficient to overcome her admissions that she was unable to work, Physician Assistant Kenneth Howard Judkins, II, testified he assessed Figueroa's return to work on June 7, 2017, and approved her return to work with recommended restrictions.  In other words, Figueroa's testimony was not the only testimony establishing she was a qualified individual.

In light of evidence presented at trial, the Court cannot say it is clear the evidence and inferences cannot reasonably support Figueroa.  *Erickson v. Pierce County*, 960 F. 2d 801 (9th Cir. 1992).  Further, the Court does not find the judgment is against weight of the evidence or the trial was not fair to Gannet.  Additionally, the Court does not find a miscarriage of justice warranting a new trial.

### B.  *Mitigation of Lost Wages*

Gannett asserts substantial evidence does not support Figueroa mitigated her lost wages by looking for a new job.  Indeed, "[a]s a broad proposition, injured parties are expected to mitigate the damage they suffer." *Sangster v. United Air Lines, Inc.*, 633 F.2d 864 (9th Cir. 1980).

The jury in this case was instructed:

> Plaintiff has a duty to use reasonable efforts to mitigate damages as to wages. To mitigate means to avoid or reduce damages.
>
> Defendants have the burden of proving by a preponderance of the evidence:
>
> > 1.    that Plaintiff failed to use reasonable efforts to mitigate damages; and

1          2.      the amount by which damages would have been mitigated.

2    Jury Instructions (Doc. 267, p. 4).  The evidence presented at trial established that, as of her

3    termination, Figueroa was able to perform the essential functions of her job.  Evidence was

4    also presented that Figueroa believed she suffered both physical and mental deterioration

5    as a result of the termination of her position and Gannett's assertions she had resigned.  In

6    such circumstances, the jury could have found that Figueroa's reasonable efforts to mitigate

7    damages as to wages did not necessarily require looking for a new job.

8          Gannett argues Figueroa did not mitigate her lost wages.  However, this does not

9    consider whether the lack of effort was reasonable in this case in light of Figueroa's

10   changing circumstances.  Rather, in these circumstances, reasonable efforts to mitigate did

11   not require Figueroa to seek other employment.  Although Gannett argues the law is clear

12   that Figueroa was "required to look for a new job."  Motion (Doc. 306, p. 11), Gannett has

13   not provided this Court with any authority that requires such action without any

14   consideration of what reasonable efforts are in the circumstances.  For example, in

15   *Teutscher v. Woodson*, 835 F.3d 936, 947 (9th Cir. 2016), a case relied upon by Gannett,

16   the court pointed out that a plaintiff must make reasonable efforts to mitigate the damages

17   paid by an employer by seeking suitable alternative employment.  In other words, the jury

18   and this Court must consider reasonable efforts with the facts of this case.  The jury was

19   able to evaluate the credibility of Figueroa.  Further, the burden was on Gannett to establish

20   a lack of reasonable efforts by Figueroa to mitigate damages.  The Court cannot say "the

21   evidence, construed in the light most favorable to the [Figueroa], 'permits only one

22   reasonable conclusion, and that conclusion is contrary to the jury's verdict.'"  *Keates*, 846

23   F. App'x at 630.  The Court does not find the judgment is against the weight of the evidence

24   or the trial was not fair to Gannett.  Additionally, the Court does not find a miscarriage of

25   justice warranting a new trial.

26   . . . . .

27

28

1  C.  *Confusion of the Jury*

2  Gannett argues the jury's confusion about mitigation of wages affected the entire

3  verdict.  Although Gannett had requested the jury instruction regarding mitigation include

4  the statement, "In the employment context, mitigating damages means actively seeking

5  alternative employment[,]" Def. Ins. (Doc. 218, p. 5), the Court included the Model Civil

6  Jury Instruction 5.3, which does not include the additional language.  In other words,

7  although case law has discussed seeking employment to establish mitigation, the Ninth

8  Circuit declined to include such a requirement in the relevant instruction.  Indeed, numerous

9  cases discussing mitigation in the employment context recognize an employee has a duty to

10  make "'reasonable efforts' to obtain employment." *Haeuser v. Dept. of Law*, 368 F.3d 1091,

11  1100 (9th Cir. 2004).  In this case, considering reasonable efforts necessarily included

12  consideration of all the facts of this case, including Figueroa's condition.

13  Simply put, the Court does not agree with Gannett's argument the jury (and this

14  Court) erred in considering other factors in determining whether Figueroa made reasonable

15  efforts to mitigate her damages.  The Court cannot say "the evidence, construed in the light

16  most favorable to the [Figueroa], 'permits only one reasonable conclusion, and that

17  conclusion is contrary to the jury's verdict.'"  *Keates*, 846 F. App'x at 630.  Further, the

18  Court does not find the judgment is against weight of the evidence or the trial was not fair

19  to Gannet.  Additionally, the Court does not find a miscarriage of justice warranting a new

20  trial.

21

22  D.  *Punitive Damages*

23  Gannett argues the punitive damages award should be vacated because it did not act

24  with malice or reckless disregard.  Even if substantial evidence exists to support the

25  judgment, Gannett asserts a new trial should nonetheless be ordered because the punitive

26  damages award is against the weight of the evidence and that determination affected the

27  entire trial.

28

1       To recover punitive damages, a Title VII plaintiff must show that the employer

2   engaged in discrimination "with malice or with reckless indifference to the federally

3   protected rights of [the plaintiff]."   42 U.S.C. § 1981a(b)(1). The Supreme Court has

4   rejected the argument that punitive damages are available only in cases of an employer's

5   "egregious" conduct.  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999).  Rather, a

6   finding of "malice" or "reckless disregard" hinges on an employer's "knowledge that it may

7   be acting in violation of federal law, not its awareness that it is engaging in discrimination."

8   *Id*. at 526, 535; *see also id.* at 536 (Employer may be liable for punitive damages where it

9   "discriminate[s] in the face of a perceived risk that its actions will violate federal law.").

10  As pointed out by Gannett, "in the punitive damages context, an employer may not be

11  vicariously liable for the discriminatory employment decision of managerial agents where

12  these decisions are contrary to the employer's 'goodfaith efforts to comply with Title VII.'"

13  *Id*. at 544-45.

14      The jury could have determined from the evidence presented in this case that Gannett

15  acted in the face of a perceived risk that its actions would violate federal law.  Indeed, the

16  evidence was contradictory as to whether Figueroa had resigned.  For example, Felipe

17  Lundin testified as to a conversation he had with Figueroa.  He drafted an email on June 21,

18  2017, in which he summarized the June 20, 2017, conversation he had Figueroa; he testified

19  that it was his intention "to reflect and include everything that occurred during [his]

20  conversation with [Figueroa]" and did not purposely leave anything out of the email.  Nov.

21  18, 2022, Transcript ("11/18/22 TR) (Doc. 250, pp. 14-16).   He testified neither he nor

22  Figueroa used the words "quit" or "resign."  *Id*. at 16.  However, Figueroa testified that on

23  June 20, 2017, she told Lundin that she had to call Social Security to advise them she was

24  returning to work.  November 16, 2022 Transcript ("11/16/22 TR") (Doc. 251, p. 41).

25  Figueroa also testified that, after she had been advised on June 20, 2017, by Lundin to return

26  to work on June 21, 2017, at the regular start time (10:00 a.m.) she informed Lundin she

27  would return to work.  *Id*. at 40-41.

28

1   Further, Lundin testified that, after 10:00 a.m. on June 21, 2017, he had been
2   instructed to call Figueroa and advise her that her resignation had been accepted to pursue
3   Social Security.   Lundin also testified that Figueroa had told him she would pursue Social
4   Security Disability and would "do what they specifically told her to do." 11/18/22 TR (Doc.
5   250, p. 23); *see also id*. at 19; Figueroa had told him she was only 10-15 minutes away from
6   work and she was on her way to work.  *Id*. at pp. 16, 18.  Figueroa testified she would not
7   have pursued Social Security benefits if she had been permitted to return to work with
8   accommodations.  11/16/22 TR (Doc. 251, p. 39).

9   As stated by Gannett, evidence indicated it had consistently accommodated Figueroa's
10  requests for reasonable accommodations.  However, when Figueroa sought to return to work
11  on June 8, 2017, she was informed to remain off of work while Gannett considered the
12  doctor's release which outlined her work restrictions.  Shortly thereafter, and after Gannett
13  received an updated release from the doctor and the conversation with Lundin, Gannett
14  deemed Figueroa to have resigned her position.  The jury could have found Figueroa did not
15  resign, but that Gannett forced the resignation on her.  In effect, the jury had to determine
16  the credibility and significance of the witnesses/evidence regarding the Social Security
17  Disability references. Viewing the evidence in a light most favorable to Figueroa, sufficient
18  evidence supports a finding Figueroa did not resign.  From this evidence the jury could
19  reasonably reach a conclusion that Gannett acted with malice or with reckless indifference.
20  Such a conclusion is not contrary to the jury's verdict.

21  Further, although a reasonable inference from the evidence could lead to a conclusion
22  that the belief Figueroa was resigning was based on a misunderstanding, reasonable
23  inferences could also lead to a conclusion that Gannett knew it was acting in violation of
24  federal law when Figueroa did not appear for work that morning and Lundin was instructed
25  to advise Figueroa her resignation had been accepted.[2]  In these circumstances, the Court

27  [2]Lisa Cote testified that 10:00 a.m. was not a specific deadline for Figueroa to appear
28  back to work. Nov. 17, 2022 Transcript (Doc. 249, p. 14). Lundin similarly testified. *Id*. at

1   does not find the judgment is against weight of the evidence or the trial was not fair to

2   Gannet.  Additionally, the Court does not find a miscarriage of justice warranting a new

3   trial.

4         The Court finds it appropriate to deny the Renewed Motion for Judgment as a Matter

5   of Law and Motion for New Trial (Doc. 306).

6

7   IV.   *Motion for Attorney's Fees* (Doc. 295) *and Supplemental Request* (Doc. 312)

8         Figueroa requests a total award of $775,423.00 for attorney's fees through October

9   3, 2022 (987.8 hours at $785/hour).  Reply (Doc. 312, p. 6).  Figueroa seeks an award

10   pursuant to the provisions of the Arizona Civil Rights Act ("ACRA") (A.R.S 41-1481.J.),

11   the Americans with Disabilities Act ("ADA") (42 USC 2000e-5(k)), Fed.R.Civ.P. 37c (2)

12   for Defendant's refusal to admit multiple requests for admissions.  *See also* LRCiv 54.1 and

13   54.2.

14

15       A.  *Verbal Fee Agreement*

16         Gannett asserts the request should be denied as a matter of public policy.

17   Specifically, Gannett asserts there was no written fee agreement between Figueroa and her

18   attorney as required by R.Sup.Ct.Ariz. 42, Ariz.R.Prof.Cond. ("ER") 1.5(c).  That rule

19   provides *inter alia*:

20       A fee may be contingent on the outcome of the matter for which the service is
    rendered. . . . A contingent fee agreement shall be in a writing signed by the client

21       and shall state the method by which the fee is to be determined, including the
    percentage or percentages that shall accrue to the lawyer in the event of settlement,

22       trial or appeal, litigation and other expenses to be deducted from the recovery, and
    whether such expenses are to be deducted before or after the contingent fee is

23       calculated. The agreement must clearly notify the client of any expenses for which
    the client will be liable whether or not the client is the prevailing party. Upon

24       conclusion of a contingent fee matter, the lawyer shall provide the client with a
    written statement stating the outcome of the matter and, if there is a recovery,

25       showing the remittance to the client and the method of its determination.

26   *Id*. The Motion states:

27

28   29.

- 11 -

1
2

> The undersigned represented Plaintiff in previous matters. We did not enter a written fee agreement. We agreed in the case of a favorable result, the undersigned would request the maximum amount for an award of attorney's fees under ADA or ACRA.

3   Motion (Doc. 295, p. 4).    The parties disagree whether this agreement constitutes a

4   contingency fee agreement requiring compliance with ER 1.5(c).

5          Gannett asserts, under the agreement, counsel would only be compensated should a

6   favorable result be obtained.    In other words, the fee was contingent on a favorable

7   outcome.   Gannett points out that, "[i] the absence of a written contingent fee agreement,

8   an attorney should anticipate that work done in violation of ER 1.5(c) is being undertaken

9   without any meaningful expectation of compensation.   *Levine v. Haralson, Miller, Pitt,*

10  *Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 239 (App. 2018) ("unwritten contingent fee

11  agreements are void as against public policy").

12         Figueroa argues, however, that both the verbal fee agreement and applicable federal

13  and state discrimination laws allow for an award of attorney's fees by the establishment of

14  Gannett's liability for its wrongful discrimination.   A plain reading of ER 1.5(c) and the

15  summarized verbal agreement between Figueroa and her attorney establish the agreement

16  was contingent upon a favorable result.   Further, ER 1.5(c) sets forth exceptions for the

17  written requirement, none of which are applicable in this case.

18         However, ER 1.5 addresses the ethical requirements of counsel, not whether an

19  award of attorney's fees should be awarded.   Indeed, Arizona's Ethical Rules "are designed

20  to prevent harm and protect clients."   *Levine,*  244 Ariz. 234 at 238; *see also Rodriguez v.*

21  *West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009); *Image Tech. Serv., Inc. v.*

22  *Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1988).   In *Levine*, where the suit was

23  between an attorney and a former client, the court determined a verbal contingency fee

24  agreement was against public policy.   Here, however, Figueroa's affidavit establishes she

25  does not believe she was harmed by the agreement.   The verbal fee agreement in this case

26  and a potential fee award does not implicate the public policy discussed in *Levine* and

27  similar cases.

28

1    The Court finds the verbal fee agreement, as well as the possible ethical violation,

2    does not affect Figueroa's ability to seek an award of fees from Gannett.

3

4    B. *Prevailing Party*

5    Under the ACRA and the ADA, attorneys' fees may be awarded to "the prevailing

6    party." *See* A.R.S. § 41-1481.J ("the court may allow the prevailing party . . . a reasonable

7    attorney fee as part of the costs"); 42 U.S.C. § 2000e–5(k) (the court "in its discretion, may

8    allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs"). 42 U.S.C.

9    § 2000e–5(k). Accordingly, the Court must first determine which party is the prevailing

10   party.

11   The Ninth Circuit applies the same "prevailing party" analysis articulated by the

12   Supreme Court to requests for costs under Rule 54(d) and requests for attorneys' fees in civil

13   rights actions. *See Miles v. California*, 320 F.3d 986, 989 (9th Cir. 2003). A plaintiff

14   prevails "when actual relief on the merits of his claim materially alters the legal relationship

15   between the parties by modifying the defendant's behavior in a way that directly benefits the

16   plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). Additionally, the Supreme Court

17   has stated relief "on the merits" occurs when the material alteration of the parties' legal

18   relationship is accompanied by "judicial imprimatur on the change." *Buckhannon Bd. &*

19   *Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). In

20   other words, a plaintiff is the prevailing party if he obtains "[a] judgment for damages in any

21   amount" because that judgment "modifies the defendant's behavior for the plaintiff's benefit

22   by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar*,

23   506 U.S. at 113.

24   In this case, Figueroa prevailed on the claims presented to the jury and was awarded

25   compensatory and punitive damages. Based on this award of damages, the Court finds

26   Figueroa is the prevailing party and is eligible for an award of attorney's fees.

27

28

V.  *Reasonable Attorney's Fees*

The Court, in its discretion may allow a prevailing party "reasonable attorney's fees (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e-5(k); *see also* A.R.S. § 41-1481.J.  Factors to consider in determining whether attorneys' fees are reasonable include:

(A) The time and labor required of counsel;

(B) The novelty and difficulty of the questions presented;

(C) The skill requisite to perform the legal service properly;

(D) The preclusion of other employment by counsel because of the acceptance of the action;

(E) The customary fee charged in matters of the type involved;

(F) Whether the fee contracted between the attorney and the client is fixed or contingent;

(G) Any time limitations imposed by the client or the circumstances;

(H) The amount of money, or the value of the rights, involved, and the results obtained;

(I) The experience, reputation and ability of counsel;

(J) The "undesirability" of the case;

(K) The nature and length of the professional relationship between the attorney and the client;

(L) Awards in similar actions; and

(M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c).


A.  *Time and Labor, Novelty, Skill*

This case involved protracted discovery, extensive motion practice, and two jury trial (including one bifurcated trial).  This required a significant expenditure of time by counsel. The claims addressed in this case were not novel, but did involve inquiring into whether Gannett provided a pretextual reason for its action.  While this case may have been slightly more involved than the typical discrimination suit, contrary to Figueroa's assertion, the Court

1   does not find this case was particularly difficult or complex.   Additionally, the time

2   expended in this case was over a protracted amount of time and should not have precluded

3   other employment.

4        In her motion, Figueroa asserts 987.8 hours were expended in Figueroa's case.

5   Generally, the Court finds this a reasonable amount of time and labor for counsel's

6   representation of Figueroa in this matter.   However, as discussed *infra*, the Court does find

7   some entries unreasonable.

8

9        B.   *Customary Fee in Similar Matters / Reasonable Rate*

10       "In determining what constitutes a reasonable hourly rate, the Court looks to the

11   prevailing market rates in the relevant community 'for similar work performed by attorneys

12   of comparable skill, experience, and reputation.'"   *Sw. Fair Hous. Council v. WG Scottsdale*

13   *LLC*, No. CV-19-00180-TUC-RM, 2022 WL 16715613, at *4 (D. Ariz. Nov. 4, 2022)

14   Figueroa's attorney claims a rate of $785.00 per hour for his services.   Recent case law

15   indicates this is not a reasonable rate in the Tucson, Arizona, market.   *See e.g. id*. (hourly

16   rate of $425); *Bell v. VF Jeanswear LP*, No. CV-14-01916-PHX-JJT, 2019 WL 1409433

17   (D. Ariz. Mar. 28, 2019), *aff'd in part, rev'd in part and remanded*, 819 F. App'x 531 (9th

18   Cir.   2020);   (hourly   rate   of   ($515);   *Everts   v.   Sushi   Brokers   LLC*,   No.

19   CV-15-02066-PHX-JJT, 2018 WL 3707923, at *2 (D. Ariz. Aug. 3, 2018) ($280 per hour

20   for a senior partner, $240 per hour for associates); *Davis v. White Mountain Communities*

21   *Hosp., Inc.*, No. 3:15-CV-8080-HRH, 2016 WL 1578747, at *2 (D. Ariz. Apr. 19, 2016)

22   (hourly rate of $220); *Ameriprise Fin. Servs. Inc. v. Ekweani*, No. CV-14-00935-PHX-DGC,

23   2015 WL 3823302, at *3 (D. Ariz. June 19, 2015), *aff'd*, 683 F. App'x 641 (9th Cir. 2017)

24   (hourly rate of $230).

25       The Court also consider the expertise of counsel.   *See e.g., Sw. Fair Hous. Council*,

26   2022 WL 16715613, at *1, *citing Hensley v. Eckhart*, 461 U.S. 424, 429 (1976).   Counsel's

27   declaration does not establish that he has significant experience or expertise with

28

1  employment discrimination matters.  Additionally, the Court agrees with Gannett that

2  counsel's failure to comply with ethical requirements (although an insufficient basis to

3  preclude an award) is relevant in determining a reasonable rate.  *Rodriguez v. West*

4  *Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

5  Figueroa cites to a number of cases that allow for a rate in the range of what is

6  sought by Figueroa.  However, many of the cited cases are from other jurisdictions.  Further,

7  most of the Arizona cases involved counsel practicing in the Phoenix, Arizona, market.  *See*

8  *e.g. Erwig v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00338-PHX-DGC, 2022 WL

9  3577273, at *1 (D. Ariz. Aug. 19, 2022); *Koch v. Desert States Emps. & UFCW Unions*

10  *Pension Plan*, No. CV-20-02187-PHX-DJH, 2021 WL 6063534, at *1 (D. Ariz. Dec. 22,

11  2021).  Additionally, the only case cited by Figueroa that includes fees for Tucson counsel

12  involved a Phoenix case, an attorney with extensive experience in the area of law relevant

13  to the case, *see* John E. Phillips website, http://www.johnephillips.com/, and a written

14  contingency fee agreement.  The Court in that case stated the was "in line with effective

15  hourly rates previously approved by the Ninth Circuit."  *Chisholm v. Comm'r of Soc. Sec.*

16  *Admin.*, No. CV-19-08010-PCT-JAT, 2022 WL 1569074, at *2 (D. Ariz. May 18, 2022).

17  While such fees may be in line with an attorney with extensive experience in the relevant

18  area-of-law and comparable market, such is not the case in this matter.

19  The Court finds a $450 per hour for work performed by Figueroa's counsel is

20  reasonable.

21  Additionally, it is not reasonable to charge an experienced attorney rate for clerical

22  tasks and the Court will preclude those tasks from reimbursement.  *See e.g., Bodine v.*

23  *Comm'r of Soc. Sec. Admin.*, No. CV-21-00721-PHX-DWL, 2023 WL 243966, at *2 (D.

24  Ariz. Jan. 18, 2023); *Lexington Insurance Co. v. Scott Homes Multifamily Inc.*, 2016 WL

25  5118316, *16 (D. Ariz. 2016) (excluding entries for printing, e-filing and downloading).[3]

27  [3]The Court notes the case law varies as to whether obtaining service of process is a

28  compensable expense.  In a different context, the Ninth Circuit has determined it is

- 16 -

1    Further, because Figueroa did not provide a paralegal/administrative assistant rate, some

2    courts may decline to award any fee for such tasks.  *See e.g. Scottsdale Gas Co. LLC, v.*

3    *Tesoro Ref. & Mktg. Co. LLC*, No. CV-19-05291-PHX-SPL, 2021 WL 2895501, at *5 (D.

4    Ariz. July 9, 2021).  However, this Court finds it appropriate to award fees for paralegal

5    tasks at an hourly rate of $150.00.  *See e.g. Sw. Fair Hous. Council*, 2022 WL 16715613,

6    at *5 (reasonable hourly rate for paralegals and law clerks is $125.00).

7         Gannett also argues that block billing is not permitted.  *See e.g. Advanced*

8    *Reimbursement Sols. V. Spring Excellence Surgical Hosp., LLC*, No.

9    CV-17-01688-PHX-DWL, 2020 WL 2768699, at *6 (D. Ariz. May 28, 2020).  However,

10   "courts tend to award fees despite the presence of block-billing where the billing is for

11   'closely related tasks, each covering no more than a few hours.'"  As summarized *infra*,

12   block billed tasks that are not closely related will be precluded from the award.  Similarly,

13   entries that do not include adequate description may reduce an award.  *Herrera-Amaya v.*

14   *Arizona*, No. CV-14-02278-TUC-RM, 2019 WL 2724059, at *5 (D. Ariz. June 28, 2019),

15   *citing* LRCiv 54.2(e)(2).  Such entries will be precluded from the award.

16

17        C.  *Amount of Money / Value of Rights / Results Obtained*

18        The amount of money involved in this case was limited by statutory caps.  However,

19   the Court finds the value of a successful litigation regarding discrimination to be significant.

20   The imposition of punitive damages by the jury confirms this significance.

21   _____

22   compensable for purposes of an attorney's fees award.  *Trustees of Directors Guild of*

23   *Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000), *but see*

24   *Neil v. Comm'r of Soc. Sec.*, 495 Fed. Appx. 845, 847 (9th Cir. 2012) (holding that "the
     district court did not abuse its discretion in declining to award [plaintiff] attorney's fees for

25   purely clerical tasks such as filing documents and preparing and serving summons"); *see also*
     *Compass Bank v. Morris Cerullo World Evangelism*, No. 13:CV-0654-BAS (WVG), 2015

26   WL 3442030, at *8 (S.D. Cal. May 28, 2015) (reducing billing entries due to a finding that

27   "certain tasks were ministerial and did not require an attorney to perform[,]" including
     drafting a revised subpoena, preparing instructions for service, and phone calls and emails

28   to reschedule deposition).  The Court declines to disallow such entries on this basis alone.

- 17 -

1

2     D.  *Nature and Length of Relationship Between Attorney and Client*

3     Figueroa and counsel maintained a professional relationship for almost thirty years.

4

5     E.  *Claimed Unnecessary Motion Practice*

6     Gannett asserts Figueroa's attempt to obtain fees for unnecessary motion practice

7     should be denied.  Although some motions have been denied, it is the nature of litigation

8     that parties seek to have interests and issues clarified by motion practice.  The Court

9     declines to disallow such requests simply because opposing counsel deems such requests

10    unnecessary.

11

12    VI.  Fed.R.Civ.P. 37(c)(2)

13    The discovery rules provide for possible sanctions, including reasonable expenses

14    (including attorney's fees) caused by a failure to disclose or supplement.  Figueroa states in

15    the first paragraph of her motion that she is seeking an award of attorney's fees pursuant to

16    the applicable rule.  *See* Fed.R.Civ.P. 37(c)(2).  However, Figueroa fails to clarify which,

17    if any, of the requested fees should be pursuant to this authority.  The Court declines to

18    award Figueroa attorney's fees based on Fed.R.Civ.P. 37(c)(2).

19

20    VII.  *Consideration of Specific Entries/Tasks*

21    In light of the foregoing considerations and conclusions, the Court finds some entries

22    to be unreasonable.  The hourly rate requested for all tasks is $785.00.  As previously stated,

23    the Court finds a reasonable hourly rate for counsel to be $550.00 and, for paralegal tasks,

24    $150.00 per hour.  The Court considers that some entries appear to include mixed clerical,

25    paralegal, and attorney tasks.  The Court uses its discretion to determine what is a

26    reasonable award for such tasks.

27

28

| Date | Task | Hours | Amount | Reason |
|------|------|-------|--------|--------|
| 11/6/18 | Prep summons and initiate service on Agent | .6 | $471 reduced to $90 | paralegal |
| 11/6/18 | Preparation FASTAR Certificate | .3 | $235.50 reduced to $0 | clerical |
| 2/15/19 | Preparation of Initial Disclosure, conference with client and file review | 3.3 | $2950.50 reduced to $0 | block billing |
| 4/30/19 | File review; preparation of discovery to defendants | 4.1 | $3218.00 reduced to $0 | block billing |
| 11/14/19 | Review and chronology of Arizona State E-mail Disclosures | 6.4 | $5024.00 reduced to $960 | paralegal |
| 3/20/19 | R/R 6 page case management order, calendar deadlines | .8 | $628 reduce by 1/4 | block billing with clerical |
| 12/6/19 | Prepared Correspondence re: Depositions | .5 | $392.50 reduced to $0 | block billing with clerical |
| 1/9/20 | Review deposition transcripts and disclosure matters in preparation of heating before magistrate and attendance at hearing | 3.2 | $2512.00 reduced to $0 | block billing |
| 1/14/20 | Research memo compelling disclosure attorney-client advice; assemble multiple excerpts and records as exhibits | 9.1 | $5024.00 reduced to $1365 | paralegal |
| 1/15/20 | Prepared Request for Settlement Conf. | .5 | $392.50 reduced to $0 | clerical |
| 1/15/20 | Insertion of Request for Admissions into Chronology | 1.5 | $1177.50 reduced to $225 | paralegal |
| 2/28/20 | Insert extensive and detailed statements and positions from Plaintiff, Cote, Lundgren, 2 depos, Lundin, other defensive witnesses, statements from attorneys and pleadings, interrogatories, admissions into CaseSoft | 8.8 | $6908.00 reduced to $1320 | paralegal |

| 3/6/20 | Review of Defendant's MSJ, dictation of summary and contact with Natalie. | 3.8 | $2826.00 reduced to $0 | block billing |
|---|---|---|---|---|
| 4/16/20 | Review and categorize Cote Deposition, Insert into Reply Opp, and Conference with Dr. Proust | 5.3 | $4160.50 reduced to $0 | block billing |
| 6/26/20 | Review re: Damages claim, interview with client, e-mails re: hearing in federal court | 2.7 | $2119.50 reduced to $0 | block billing |
| 7/1/20 | Conference with client, Supplement to Settlement Statement: damages and injury, prep for MSJ Hearing | 4.8 | 3768.00 reduced to $0 | block billing |
| 1/29/21 | Motion for Reconsideration with details and timeline. Plaintiff requests for policies/guidelines | 3.8 | $2983.0 reduced to $0 | block billing |
| 8/16/21 | Preparation of subpoenas to Ms. Cote and Ms. Spears | .6 | $471.00 reduced to $0 | clerical |
| 11/3/21 | Organize job appraisals and job descriptions as exhibits, *fn omitted* | 3.0 | $2355.00 reduced to $450 | paralegal |
| 11/5/21 | Prepare trial subpoenas and correspondence for Lisa Cote and Dr. Randall Prust | 1.0 | $785.0 reduce by 3/4 | block billing with clerical |
| 11/13/21 | Search for Prust and Judkins and Rincon Medical, which office was closed and subpoena could not be served. Multiple attempted communications | 4.5 | $3532.50 reduced to $0 | clerical |
| 11/29/21 | Conference with client re strategy, review pleadings and additional legal research re admissibility disability benefits. | 4.6 | $1256.00 reduced to $0 | block billing |
| 4/27/22 | Research and request first trial transcripts from court reporter | 4.5 | $549.50 reduced to $0 | block billing with clerical |
| 5/26/22 | Continue review and assembly of Plaintiffs and Defendants exhibits | 3.3 | $2590.50 reduced to $495 | paralegal |
| 5/26/22 - 30/22 | Re-organization exhibits 31 and 32 at request of Defendant, *fn omitted* | 1.0 | $785.00 reduced to $150 | paralegal |

| 7/20//22 | Travel to courthouse to return Jury pool flash drive and review transcripts of testimony at court terminal | 2.4 | $1884.00 reduced to $0 | block billing with clerical |
|---|---|---|---|---|

The Court finds 49.85 hours to not be allowed at the attorney rate of pay ($450/hour) and that 33.7 hours to be allowed only at a paralegal rate of pay ($150/hour).  The Court finds, therefore, an award of attorney's fees for $406,912.50 is appropriate for work completed by counsel (904.25 hours).  Further, the Court finds an additional award of $5,055.00 is appropriate for paralegal tasks (33.7 hours).  The Court concludes Figueroa is entitled to a total award of $411,967.50 for attorney's fees.

## VIII.  *Costs*

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."   Fed.R.Civ.P. 54(d)(1).  "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded."   *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999).  Here, Gannett asserts the award for costs should be limited because Figueroa failed to comply with the local rule.  *See* LRCiv 54.2; *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010) (upholding denial of taxable costs where party "failed to comply with the local rules governing motions for taxable costs"); *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 481 (D. Ariz. 2019) ("failure to strictly comply with the requirements of Fed. R. Civ. P. 54(d) and LRCiv 54.1 is fatal to . . . request for taxable costs[;]" court may excuse failure to comply).

Here, Figueroa's Bills of Costs include both taxable and non-taxable costs.  *See e.g.*, 28 U.S.C. § 1920 (Taxable costs are " (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;  (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of

1   making copies of any materials where the copies are necessarily obtained for use in the case;

2   (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed

3   experts, compensation of interpreters, and salaries, fees, expenses, and costs of special

4   interpretation services under section 1828 of this title."); 42 U.S.C. § 1988.

5       The Clerk of Court granted the request for an award of costs for taxable items:

6   $373.44 for fees of the Clerk and $196.00 for service of summons and subpoenas. The

7   Clerk also awarded costs of deposition transcripts ($357.70 (invoice #11531), $329.45

8   (invoice # 11661), $708.50 (invoice #2667), $163.90 (invoice #11675), but did not permit

9   reporting services fees and exhibits as non-taxable. The non-taxable portion of the

10  transcript request denied is $481.25. The Clerk also denied the request for $742.50 for fees

11  and disbursements for printing and $216.00 for trial transcripts for the use of counsel as

12  non-taxable. Lastly, the requested award for fees was reduced to $120 because the fees for

13  expert witnesses are not taxable in a greater amount than that statutorily allowed for

14  ordinary witnesses.

15      As to witness fees, Figueroa requests costs attributed to a meeting with potential

16  witness Dr. Randall Prust in the amount of $300.00 (8/28/20) and attendance of court

17  proceedings by Kenneth Judkins, P.C., in the amount of $1,000.00 (9/28/22). Figueroa has

18  provided documentation to support these requests. However, Figueroa also seeks $1,800.00

19  for witness Dan Myers and does not provide any documentation for this request.

20      Although blending the requests for taxable and non-taxable items is not in

21  compliance with the local rule, the Court may excuse a failure to fully comply with the local

22  rule. *Gary*, 398 F. Supp. 3d at 481. However, the Court will limit the award of costs to

23  those costs which are supported by documentation. Therefore, the Court will award

24  Figueroa $2659.75 for non-taxable costs.

25

26  IX. *Conclusion*

27      The Court finds it appropriate to grant Figueroa's request for an award of attorney's

28

1   fees in the amount of $411,967.50.  The Court further finds it appropriate to award Figueroa

2   an award of non-taxable costs in the amount of $2659.75.

3

4        Accordingly, IT IS ORDERED:

5        1.    The Request for an Order to Clerk to Maintain File Open to Allow Plaintiff

6   to Move for Attorney's Fees and Costs (Doc. 294) is DENIED.

7        2.    The Motion for Extension of Time (Doc. 310) is GRANTED.

8        3.    The Renewed Motion for Judgment as a Matter of Law and Motion for New

9   Trial (Doc. 306) is DENIED.

10       4.    The Motion for Attorney's Fees (Docs. 295, 296, 298, 301) is GRANTED IN

11  PART AND DENIED IN PART.

12       5.    Figueroa is awarded attorney's fees in the amount of $411,967.50.  Figueroa

13  is awarded non-taxable costs in the amount of $2659.75.

14       6.    The Clerk of Court shall enter an amended judgment against Defendants and

15  in favor of Plaintiff for combined compensatory and punitive damages of $300,000, back

16  pay, along with pre-judgment interest through the date of the original judgment, in the

17  amount of $93,457.04, attorney's fees in the amount of $411,967.50, and non-taxable costs

18  in the amount of $2659.75.

19       DATED this 9th day of March, 2023.

20

21

22       _____
             Cindy K. Jorgenson
23           United States District Judge

24

25

26

27

28

- 23 -